UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN W. N.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 3:24-CV-5188-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of his applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of certain medical opinion evidence. Had the ALJ properly considered this evidence, Plaintiff's residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

I. **Factual and Procedural History**

Plaintiff protectively filed a claim for SSI on October 18, 2021, alleging disability beginning on April 10, 2021. Dkt. 5, Administrative Record ("AR") 152–71. His application was denied at the initial level and on reconsideration, and he requested a hearing before an ALJ. AR 59, 76, 91–94. While the hearing request was pending, Plaintiff had earnings that made him eligible for DIB, with a date first insured of July 1, 2022. *See* AR 196–98. He protectively filed a claim for DIB on March 21, 2023. AR 202–04. For the purposes of that application, Plaintiff alleged disability beginning on the date first insured. AR 200. Plaintiff's DIB claim was elevated to the hearing level to be adjudicated with the SSI claim. *See* AR 204. The hearing took place on March 16, 2023, and Plaintiff was represented by counsel. AR 37–58. The ALJ issued an unfavorable decision denying benefits, and the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–6, 14–36, 150–51, 313–18. Plaintiff appealed to this Court. *See* Dkt. 1.

II. **Standard of Review**

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "We review only the reasons provided by the ALJ in the disability

determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III.   Discussion**

Plaintiff argues the ALJ erred in evaluating certain medical opinion evidence, lay witness evidence, and Plaintiff's testimony about the severity of his symptoms. Dkt. 7 at 1–2. He contends the proper remedy for these errors is remand for an award of benefits. *Id.*

A.  *Medical Opinion Evidence*

Plaintiff first argues the ALJ erred in evaluating medical opinion evidence from two of Plaintiff's mental health providers, Teresa Gaiser, LICSW, and Kimberly Ann Cotton, PMHNP. Dkt. 7 at 3, 6.

The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical

opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

The two most important factors affecting an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). An opinion is more "supportable," and thus more persuasive, when the source provides more relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th 785 at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Kimberly Ann Cotton, PMHNP, completed a mental impairment questionnaire on February 23, 2023. AR 496, 501. She stated she had been seeing Plaintiff every one to two months for just over a year. AR 496. Plaintiff had diagnoses as schizoaffective disorder, bipolar type; generalized anxiety disorder; and social anxiety disorder. *Id.* Ms. Cotton identified multiple symptoms associated with Plaintiff's diagnoses, including oddities of thought, perception, speech, or behavior; mood disturbance; social withdrawal or isolation; emotional lability;

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

delusions or hallucinations; paranoia or inappropriate suspiciousness; generalized persistent anxiety; and difficulty thinking or concentrating. AR 496–97. She added that Plaintiff avoids being in social situations, has racing thoughts, and demonstrates irritability. AR 497. In support of these symptoms, she cited clinical findings that Plaintiff was "anxious, depressed, irritable, [and] paranoid." *Id.* She noted Plaintiff had demonstrated some improvements but described his prognosis as guarded. AR 497–98. She opined that Plaintiff's impairments or treatment would cause him to be absent from work 50% of the time or more. AR 498.

Based on her examination, the questionnaire directed Ms. Cotton to rate Plaintiff's ability to perform various work-related activities on a day-to-day basis in a regular work setting on a scale of 1 to 5:

> 1   Able to perform designated task or function with no observable limits.
> 2   Able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity and unable to perform) no more than 10% of the workday or workweek (i.e., one hour or less per day or one-half day or less per week).
> 3   Able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity and unable to perform) from 11-20% of the workday or workweek (i.e., more than one hour per day or more than one-half day per week).
> 4   Able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity and unable to perform) more than 20% of the workday or workweek (i.e., more than one hour and up to two hours per day or one-half to one day per week).
> 5   Not able to perform designated task or function on regular, reliable and sustained schedule.

AR 498–99.

Ms. Cotton gave a rating of 2 to Plaintiff's ability to: carry out very short and simple instructions, make simple work-related decisions, perform at a constant pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, respond appropriately to changes in routine setting, and be aware of normal hazards and take

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

appropriate precautions. AR 499–500. She gave Plaintiff's ability to sustain an ordinary routine without special supervision a rating of 2 to 3. AR 499. She assigned a rating of 3 to Plaintiff's ability to remember work-like procedures and understand and remember very short, simple instructions. *Id.* She indicated Plaintiff's ability to maintain attention for a two-hour segment fell between 3 and 4. *Id.* She assessed level 4 limitations in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically-based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; and set realistic goals or make plans independently of others. AR 499–500. She gave a rating of 5 to Plaintiff's ability to deal with the stress of semi-skilled and skilled work, indicating he was unable to do so on a regular, reliable, and sustained schedule. AR 500.

Ms. Cotton explained that Plaintiff could "follow simple instruction and engage in routine, familiar duties and make simple decisions as well as ask questions. He does become internally preoccupied and paranoid and this can lead to distractions. He does have good insight when meds are working well." *Id.* As a result of his impairments, Ms. Cotton assessed moderate functional limitations in Plaintiff's ability to concentrate, persist, or maintain pace, and marked limitations in his ability to understand, remember, or apply information; interact with others; and adapt or manage himself. *Id.*

The ALJ found Ms. Cotton's opinion partially persuasive:

> The assessment that the claimant could persist when his medication was working well is persuasive as it is consistent with treatment records. However, the more

significant limitations found on the checkbox form are not persuasive. First, Ms. Colton [sic] provides no support for these significant limitations. In fact, these significant limitations appear to be inconsistent with the aforementioned statement that the claimant could persist with medication. Second, these significant limitations are inconsistent with treatment records and effects of medication and treatment. As noted above, the record shows the claimant's symptoms improved with appropriate treatment (Exhibit 10F/9 and 14). The effects of medication and treatment are considered in determining the weight that can be given to the claimant's symptom reports, as well as in making the residual functional capacity finding. Third, this opinion is inconsistent with the objective evidence. Specifically, mental status examinations found during the relevant period revealed fairly unremarkable findings ((Exhibits 4F/8; 5F/7, 17, and 20; 10F/10, 15, and 22).

AR 29.

First, the ALJ's characterization of the portion of the opinion he found persuasive—"[t]he assessment that [Plaintiff] could persist when his medication was working well"—is not an accurate reflection of Ms. Cotton's opinion. Ms. Cotton opined that Plaintiff had good *insight* when his medications were working well and that Plaintiff's ability to persist was moderately limited, but she made no mention of any change in this ability with medication. AR 500. Therefore, this finding is not supported by substantial evidence.

The ALJ next stated that Ms. Cotton provided no support for the significant limitations on the checkbox form. AR 29. The form itself directed the assessor to provide an opinion "based on your examination" and considering "the medical history, the chronicity of findings (or lack thereof), and the expected duration of any work-related limitations[.]" AR 498. Ms. Cotton pointed to mental status exam findings that she considered significant and included a written explanation regarding Plaintiff's capabilities.[2] *See* AR 497, 500. Therefore, the ALJ's finding that she provided "no support" for these opinions is not supported by substantial evidence. Because, as noted above, the ALJ misstated the portion of Ms. Cotton's opinion that he found

---

[2] The form directed the evaluator to "[e]xplain limitations falling into categories 1 through 3"—that is, the less severe limitations. *See* AR 500.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

persuasive, his finding that the more severe limitations were inconsistent with that assessment is also unsupported.

The ALJ then found Ms. Cotton's opined limitations inconsistent with records showing improvement with appropriate treatment. AR 29. In support of this finding, the ALJ cited to two of Ms. Cotton's treatment notes from late 2022. *Id.* (citing AR 477, 482). At the first of these two appointments, Plaintiff indicated his medications were helping his symptoms, rating his depression as three out of ten, anxiety/panic as five out of ten, and irritability as three out of ten. AR 477. He denied paranoia or mania. *Id.* However, at the second cited appointment, Plaintiff reported increased symptoms again, rating his depression as five to six out of ten, anxiety/panic as seven out of ten, and irritability as seven out of ten. AR 482. The Ninth Circuit has recognized that mental health symptoms tend to "wax and wane in the course of treatment" and "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. The ALJ's sparse citations in support of this finding, one of which does not show improvement in Plaintiff's symptoms, do not provide sufficient support.

Finally, the ALJ found Ms. Cotton's opinion inconsistent with the "fairly unremarkable findings" in multiple mental status examinations during the relevant period. AR 29. The ALJ cited to seven treatment notes dated between December 2021 and February 2023. *Id.* (citing AR 391, 404, 414, 417, 478, 483, 490). However, most of these examinations describe Plaintiff's mood/affect as anxious, depressed, and/or irritable, as Ms. Cotton referenced in her opinion. *See* AR 391, 414, 417, 478, 483. The ALJ does not provide any further explanation of how these mental status examination findings are inconsistent with Ms. Cotton's opinion. Without such an explanation, the Court cannot review the ALJ's rationale. *See Blakes v. Barnhart*, 331 F.3d 565,

569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

For the above reasons, the Court concludes the ALJ failed to properly evaluate Ms. Cotton's opinion. Accordingly, the ALJ erred. Had the ALJ properly evaluated this evidence, the ultimate disability determination may have changed, or the RFC may have included additional limitations. For example, Ms. Cotton opined Plaintiff was likely to be absent from work 50 percent of the time or more due to his impairments. AR 498. The ALJ did not account for any absenteeism in the RFC. *See* AR 22. Accordingly, the error is not harmless and require reversal.[3]

B.  *Remedy*

Plaintiff argues the proper remedy for the ALJ's errors is remand for an immediate award of benefits. Dkt. 7 at 1–2. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Under this "credit-as-true" test, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[3] Because the Court finds harmful error in the ALJ's consideration of Ms. Cotton's opinion, the Court need not address the other challenged medical opinion evidence.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

*Smolen*, 80 F.3d at 1292; *Garrison*, 759 F.3d at 1020.

The Court concludes Plaintiff has not shown that the record is free from important and relevant conflicts or that no issues remain that must be resolved. Because there are outstanding issues which must be resolved concerning Plaintiff's functional capabilities and his ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate.

C. *Remaining Issues*

Plaintiff further contends the ALJ failed to properly evaluate his testimony about the severity of his symptoms, as well as lay witness testimony in the record. Dkt. 7 at 8–9, 12. As noted above, the Court concludes the ALJ committed harmful error in assessing the medical opinion evidence and remand for further proceedings is appropriate. Due to this error, the ALJ must re-evaluate all the medical evidence on remand. Because Plaintiff may be able to present new evidence and new testimony on remand and the ALJ's reconsideration of the medical evidence may impact the assessment of Plaintiff's testimony and the lay witness evidence, the ALJ must also reconsider this evidence on remand.

**IV.    Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 5th day of September, 2024.

David W. Christel
United States Magistrate Judge